STATE OF NORTH CAROLINA ex rel. UTILITIES COMMISSION; DUKE POWER COMPANY, APPLICANT; CHEMSTRAND RE- SEARCH CENTER, INC.; NORTH CAROLINA CONSUMER'S COUNCIL, INC.; NORTH CAROLINA PUBLIC INTEREST RE- SEARCH GROUP; AFL-CIO OF NORTH CAROLINA; GREAT LAKES CARBON CORPORATION; DUKE UNIVERSITY; R. J. REYNOLDS TOBACCO COMPANY, INTERVENORS v. RUFUS L. EDMISTEN, ATTORNEY GENERAL

No. 7510UC107

(Filed 16 July 1975)

Utilities Commission § 6— electric rates — temporary increase — reason-ableness — failure to order refund

The Utilities Commission did not err in failing to order a refund of revenues previously collected by a power company under bond pur- suant to G.S. 62-135 where the Commission found in its final order that the temporary rates were just and reasonable, notwithstanding changes in the rate design effective on and after the date of the order will result in lower rates for some users than were applied during pendency of the application.

APPEAL by Intervenor, the Attorney General of North Carolina, from an order of the North Carolina Utilities Com- mission entered on 10 October 1974. Heard in the Court of Appeals 9 April 1975.

*Attorney General Edmisten, by Deputy Attorney General I. Beverly Lake, Jr., and Associate Attorney General Jerry J. Rutledge, for appellant.*

*Commission Attorney Edward B. Hipp and Associate Com- mission Attorneys Lee W. Movius and John R. Molm, for the North Carolina Utilities Commission.*

*Steve C. Griffith, Jr., George W. Ferguson, Jr., George M. Thorpe, Clarence W. Walker and John M. Murchison, Jr., attor- neys for plaintiff appellee, Duke Power Company.*

VAUGHN, Judge.

The record on appeal does not contain any of the evidence taken at a series of hearings on the application (filed 14 Septem- ber 1973) seeking an adjustment in rates which would produce about $60,380,000.00 in additional revenue. The Commission's findings of fact are, therefore, conclusive.

Intervenor has not taken exceptions to the rate increase allowed or the modification of the rate structure ordered by the Commission.

Intervenor's only contention is that the Commission erred in not ordering a refund of revenues previously collected under bond pursuant to G.S. 62-135. The part of G.S. 62-135 that is relevant to the appeal is as follows:

"(d) If the rate or rates so put into effect *are finally determined to be excessive,* the public utility shall make refund of the excess plus interest to its customers within 30 days after such final determination, and the Commission shall set forth in its final order the terms and conditions for such refund." (Emphasis added.)

Here the Commission did not determine that the temporary rates were excessive. It expressly found them to be just and reasonable. Its findings include the following:

"12. That under the rates in effect prior to the authorization of the interim rates herein and the bonded rates herein, Duke was not and would not be earning an adequate rate of return on the property used and useful in its service to the public in North Carolina and under said prior rates Duke could not continue in operation as a viable electric utility in North Carolina, and that if said interim rates and bonded rates are not approved, Duke cannot maintain its ability to compete in the market for capital funds on terms reasonable and fair to its customers and its existing investors, and could not continue the construction of plants presently being built and necessary for the continued service to the public in its service area, and the full amount of the increase applied for and the retention of the interim and bonded rates is necessary to continuation of adequate service in Duke's service area.

\*    \*    \*

17. That the rates filed herein in Docket No. E-7, Sub 159, are found to be just and reasonable rates for all amounts heretofore collected thereunder and for all amounts to be collected thereunder, without any refund therefor, pending implementation of the modified rate designs provided and approved in this Order for future application.

18. That Duke's interim and temporary rates are not unlawfully discriminatory and that the revenues collected

by Duke under provision of refund should be retained by Duke, in that the total annualized amount of revenue collected does not exceed the allowed annual general rate increase of $61,080,000 granted in this Order."

Included in the Commission's conclusions we find the following:

"The Commission concludes from all of the evidence in this proceeding that it is necessary and essential and in the public interest to approve the revenues presently being collected from interim rates and temporary rates under provisions of G.S. 62-135, and that it is further necessary and essential in the public interest to modify the rate designs upon which said rates are structured, for collection of such revenues in the future. Failure to approve said interim and temporary rates, and the revenues collected thereunder, as just and reasonable, would jeopardize adequate service to the public, and would place Duke in a weakened financial condition to compete in the market for capital funds. The public interest requires that North Carolina continue to be provided with adequate and reliable electric service to maintain a sound economy and that Duke be financially able to continue the operation of electric service which is essential to the health and welfare of the public of North Carolina. The interim and bonded rates are approved only until such time as modified rate designs to produce the same additional revenues can be placed into effect as provided hereafter in this Order.

\* \* \*

The Commission concludes that although Duke's interim and temporary rates are not unlawful, it is necessary to reprice the residential and industrial schedules in such a manner that the rates of return on these classes of service would be more nearly equal and more closely meet the other objectives set out heretofore. The Commission is of the opinion that the rate schedules listed as 'Approved' in Exhibits 1, 2, 3 and 4 (R, RW, RA, I and IP rate schedules) would produce this result and, therefore, should be substituted for Duke's proposed rate schedules under the rate section of the appropriate tariffs. All other terms and conditions of those schedules, as well as all other tariffs included in this Application, should be approved as filed. The total additional annual revenues obtained by Duke from

Utilities Comm. v. Edmisten, Attorney General

the rate schedules approved will be no greater than $61,080,000."

The effect of the modification of the rate design is effective on and after the date of the order to reduce rates for certain users and increase them for others. Overall, the revenue to be produced under the new rate structure is not less than that sought in the original application. The changes in the rate structure are prospective. The changes will, in the future, result in lower rates for some users than were applied during the pendency of the application. This, however, does not negate the Commission's findings that the temporary rates were just and reasonable.

The order is affirmed.

Affirmed.

Judges MORRIS and CLARK concur.